STATE OF NORTH CAROLINA v. JAMES WOODROW CAMERON, JR.

No. 21

(Filed 14 November 1973)

1. **Criminal Law § 79— accomplice's testimony of intention to plead guilty**

In this safecracking prosecution, trial court did not err in allowing defendant's accomplice, who was a witness for the State, to testify that he intended to plead guilty to a pending charge against him growing out of the same events where the accomplice's previous testimony clearly disclosed his participation in the crime for which defendant was on trial.

2. **Criminal Law § 79; Safecracking— charge on acts of co-conspirators — harmless error**

In a safecracking prosecution in which the State's evidence tended to show that, although defendant did not act alone, he participated in each element of the crime charged and defendant's sole defense was alibi, the trial court's instruction that "If two or more persons act together for the common purpose to commit the crime of safecracking, each of them is held responsible for the acts of others done in the commission of the crime of safecracking" did not arise upon the evidence; however, such instruction did not constitute prejudicial error in light of the clear choices afforded the jury by all the evidence of whether to believe the State's evidence or whether to believe defendant's evidence.

3. **Criminal Law § 112— additional instruction — failure to charge on burden of proof**

It was not necessary for the trial court in a safecracking case to charge further on the burden of proof in his additional instruction to the jury where the jury was properly instructed on the burden of proof when the charge is considered as a whole.

4. **Criminal Law § 139; Safecracking — indeterminate sentence — minimum term**

In imposing an indeterminate sentence on defendant for safecracking under former G.S. 14-89.1, the trial court was not confined to the lower limit of ten years provided in the statute but could properly impose a term of not less than twenty-five years to life imprisonment. G.S. 148-42.

5. **Constitutional Law § 36; Criminal Law § 139; Safecracking— indeterminate sentence — cruel and unusual punishment**

The authority to impose an indeterminate sentence for safecracking under G.S. 14-89.1 does not result in a lack of uniformity in sentencing so that such an indeterminate sentence constitutes cruel and unusual punishment.

6. **Criminal Law § 138— punishment statute changed pending appeal**

Defendant was not entitled to the benefit of the reduction in punishment for safecracking provided by the 1973 amendment to

G.S. 14-89.1 where the crime for which defendant was convicted occurred prior to the effective date of the amendment and the amending act provided that it should apply to all offenses committed *after* its ratification.

APPEAL by defendant from *Collier, J.,* 29 January 1973 Session of FORSYTH Superior Court.

Defendant was tried upon a bill of indictment which charged: "that James Woodrow Cameron . . . on the 28th day of August, 1971 with force and arms, . . . unlawfully, wilfully, and feloniously did by the use of tools force open a safe of Clinard and Baynes, Inc., a corporation, located at 630 West 4th Street, Winston-Salem, North Carolina, used for storing money and other valuables, . . . "

The State's evidence, given principally by defendant's admitted accomplices, Darrell Eugene Hicks, Glenn Wallace Enscore, Jr., and John Henry Hemrick, tended to show that on the evening of 28 August 1971, Darrell Eugene Hicks, David Pennell, Glenn Wallace Enscore, Jr., John Henry Hemrick and defendant met and were riding around the City of Winston-Salem. They discussed probable places they might break into which were not protected by burglar alarms and where there might be a safe containing money. Finally at about five or six o'clock a.m. on the morning of the 29th of August upon defendant's suggestion they all agreed to break in the business of Clinard and Baynes. Darrell Hicks, David Pennell and defendant broke into the rear of the building occupied by the business of Clinard and Baynes, Inc., removed a safe, and with the help of Enscore and Hemrick, placed it in the automobile in which they were riding. The safe was taken to a spot off Interstate 40 where they "beat the safe open" with some tools and picks. They then divided the money found in the safe. One of the owners of the business testified that prior to the breaking, the safe contained approximately $3,300 in cash and checks.

Defendant's evidence tended to show that he and his uncles, Coy Walker and William Walker, Jr., left Winston-Salem about 5:30 or 6:00 p.m. on 28 August 1971 and attended an automobile race at a track located near Durham and Burlington. They returned to Winston-Salem about 3:30 a.m. on the morning of 29 August 1971. Defendant arrived at his home about 3:30 a.m. and went to bed shortly thereafter. He remained in bed until approximately 7:00 a.m. on the following morning.

The jury returned a verdict of guilty of safecracking and pursuant to G.S. 7A-27 (a) defendant appealed from judgment imposing a prison sentence of not less than 25 years to life imprisonment.

*Attorney General Robert Morgan by Assistant Attorney General James E. Magner, Jr. for the State.*

*Richard C. Erwin, attorney for the defendant.*

BRANCH, Justice.

[1] Defendant first contends that the trial judge erred by allowing the witness Enscore to testify as to how he intended to plead to a pending charge growing out of the same events.

Glenn Wallace Enscore, Jr., the State's witness, testified that he was with John Henry Hemrick, David Pennell, Darrell Eugene Hicks and defendant on the night of 28 August 1971 and the early morning of 29 August 1971. They went to a building occupied by Clinard and Baynes, Inc., and he and Hemrick remained with the automobile while the others went to the rear of the building. Enscore and Hemrick were later summoned to bring the automobile to the rear of the building where they all loaded a safe into the car. After he and his companions had transported the safe to a place near a fish camp off Interstate 40, they "beat the safe open." The money taken from the safe was divided and his share amounted to $225 or $250.

On redirect examination of Enscore by the Solicitor, the record discloses the following:

"I have been charged in this case and I have not been tried. This is the only charge that is against me. I am represented by Mr. Fred Crumpler.

Q. What is your plea going to be in this case?

MR. COFER: Objection.

A. Guilty.

COURT: Overruled.

EXCEPTION NO. 2."

Defendant contends that the above-quoted question and answer constituted prejudicial error.

State v. Cameron

This Court has not addressed itself to the precise question here presented. However, we think that the *effect* of the admission of the evidence that the witness *intended* to thereafter enter a plea of guilty is equivalent to allowing the Solicitor to elicit evidence that a co-participant, in fact, had entered a plea of guilty.

There is considerable authority to the effect that when two or more persons are separately indicted for the same offense and are tried separately, the guilty plea of one defendant is inadmissible against the other. The rationale of this rule is that every person charged with the commission of a criminal offense must be tried upon evidence *against him.* Evidence competent and satisfactory against one person is not necessarily competent against another charged with the same crime. The introduction of such a plea when the witness has not testified against the defendant would also deprive a defendant of his constitutional rights of confrontation and cross-examination. See Annot. 48 A.L.R. 2d 1016; Wharton's Criminal Evidence 12th Ed. § 439; *State v. Kerley,* 246 N.C. 157, 97 S.E. 2d 876.

In the case of *State v. Kerley, supra,* the defendants Kerley and Powell were charged in a single bill of indictment with armed robbery. During the course of the trial, the defendant Powell, through his counsel, withdrew his plea of not guilty and entered a plea of *nolo contendere.* Powell was not called as a State's witness. The Solicitor, in his argument, referred several times to the fact that the defendant Kerley's "friend" and codefendant had entered a plea of *nolo contendere.* He referred to Powell as the "confessed robber." The Court, holding the Solicitor's argument to be reversible error stated:

"None of the cited cases supports the view that the codefendant's plea of guilty is competent for consideration as evidence against the defendant then on trial.

"When request therefor is made, it is the duty of the trial judge to instruct the jury that a codefendant's plea of guilty is not to be considered as evidence bearing upon the guilt of the defendant then on trial and that the latter's guilt must be determined solely on the basis of the evidence *against him* and without reference to the codefendant's plea. *Babb v. United States,* 218 F. 2d 538 (C.C.A. 5th); *United States v. Toner,* [173 F. 2d 140 (C.C.A. 3rd)];

State v. Cameron

*United States v. Hall,* [178 F. 2d 853 (C.C.A. 2nd)];
*O'Shaughnessy v. United States,* 17 F. 2d 225 (C.C.A. 5th).

\*　　　\*　　　\*

"Reference is made to the cases cited in two Annotations: 43 A.L.R. 2d 1004; 48 A.L.R. 2d 1016. In the latter, the annotator, after noting that a mere reference to a codefendant's plea or conviction may not be deemed sufficiently prejudicial under the circumstances of a particular case to warrant a new trial, states: 'Where, however, a prosecuting attorney urges such other conviction as justification for the jury to find the accused guilty or urges or implies that it is evidence of the accused's guilt, real prejudice results and requires not only prompt but forceful action by the trial court to eliminate the harmful effect; under some circumstances, even curative instructions to the jury will not eradicate the prejudice to the accused.' The cases cited support this statement of the prevailing rule.

\*　　　\*　　　\*

"The practical force and prejudicial effect of the solicitor's said argument is apparent. Powell's plea being incompetent as evidence against Kerley, the sanctioned use thereof as the evidential basis for said argument constitutes reversible error for which Kerley is entitled to a new trial."

This Court considered a similar question in the case of *State v. Bryant,* 236 N.C. 745, 73 S.E. 2d 791. There defendant was charged with felonious breaking and entering and larceny. The State's evidence tended to show that defendant and W. H. Ransom were police officers in the City of Charlotte. On 5 March 1951, at some time after midnight, Ransom at the request of defendant, drove a police car to a warehouse where defendant broke out a window, entered the warehouse, and returned with a TV set. They took the TV set to defendant's car. At defendant's trial Ransom testified to these facts. When the trial judge had completed the charge in defendant's case, the Solicitor announced that W. H. Ransom waived the finding of a bill of indictment and entered a plea of guilty in the prosecution against him. Defendant's counsel moved for a mistrial. The trial judge instructed the jury not to consider the Solicitor's announcement if, in fact, they had heard it, and thereupon denied defendant's motion for a new trial. This Court held that

the trial judge correctly denied defendant's motion for a new trial and stated:

> "Ransom had just been on the witness stand and testified to facts which clearly disclosed his participation in the crime for the commission of which the defendant was then on trial. The jury was already fully apprized of his guilt. For us to hold that his submission to the charge in the presence of the jury was prejudicial to the defendant would disrupt accepted procedure in criminal courts and materially hamper the orderly administration of the law. We can perceive no reason why we should place our stamp of disapproval upon it."

See also: *State v. Sutherland* (N.J.) 9 A. 2d 807; *Richards v. U. S.*, 193 F. 2d 554 (10th Cir. 1951) ; *Graff v. People* (Ill.) 70 N.E. 299; *Commonwealth v. Biddle*, (Pa.) 50 A. 262; *U. S. v. Rollnick*, 91 F. 2d 911, (2d Cir. 1937).

*Bryant* and *Kerley* are factually distinguishable. In *Kerley* the co-defendant's plea was strongly argued to the jury by the Solicitor; no such argument was made in *Bryant*. In *Kerley*, the person entering the plea did not testify. In *Bryant*, the person who entered the plea testified to facts which disclosed Bryant's guilt as well as his own.

In instant case, defendant was not deprived of his constitutional rights of confrontation and cross-examination. The record does not reflect any argument to the jury by the Solicitor concerning the witness' intent to enter a plea of guilty. Further, in view of the witness' sworn testimony, which amounted to a detailed and unequivocal admission of his guilt, we are unable to perceive how a statement of his intention to confirm this sworn, public confession by a subsequent plea of guilty could be prejudicial error.

[2] Defendant next contends that the trial judge committed prejudicial error in his charge to the jury.

The trial judge completed his charge to the jury and recessed for lunch at 12:20 p.m. When court reconvened, the following additional instruction was given to the jury:

> "COURT: Members of the jury, so there will not be any question about it—a question was raised during the lunch hour that you may not understand exactly how the law

applies—I shall instruct you further. For a person to be guilty of a crime, it is not necessary that he himself do all the acts necessary to constitute the crime. If two or more persons act together for the common purpose to commit the crime of safecracking, each of them is held responsible for the acts of the others done in the commission of safe-cracking—to clarify that in case there is any question in your mind about that particular aspect of the case.

You may now retire and begin your deliberation."

Defendant contends that the above-quoted instruction was erroneous in that (1) when considered with the other portions of the charge it is inconsistent and confusing, (2) the further charge omits the burden of proof necessary for conviction, (3) the instruction does not relate the law to the facts in evidence.

G.S. 1-180 requires the trial judge to clarify and explain the law arising on the evidence and a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial. *State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447; *State v. Wilson,* 104 N.C. 868, 10 S.E. 315. The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence. *Stern Fish Co. v. Snowden,* 233 N.C. 269, 63 S.E. 2d 557 and *State v. Jackson,* 228 N.C. 656, 46 S.E. 2d 858.

The State's evidence, principally offered through the testimony of co-participants in the commission of the crime, tended to show that defendant was not alone. However, this compelling and direct evidence was amply sufficient to support a jury finding that defendant actually participated in each element of the charged crime. Defendant's sole defense was alibi. The jurors' decision was not clouded by questions of joint participation or common purpose to commit a crime. Thus the jury was given a clear-cut decision: whether to believe the State's evidence and return a verdict of guilty or believe the defendant's evidence of alibi and return a verdict of not guilty.

We must agree that the instruction given to the jury upon the reconvening of court did not arise upon the evidence and, therefore, could not have been properly applied to the evidence. However, in light of the clear choices afforded the jury by all the evidence, we do not believe that this one statement misled or confused the jury in reaching its verdict.

[3]   It was not necessary for the trial judge to further charge upon the burden of proof in his additional instruction. It is well established that a trial judge's charge must be considered as a whole by a reviewing court. *Gilliland v. Board of Educ.*, 141 N.C. 482, 54 S.E. 413; *In re Will of Mrs. Hardee*, 187 N.C. 381, 121 S.E. 667. A contextual reading of the entire record discloses the trial judge placed the burden on the State to prove defendant's guilt beyond a reasonable doubt and correctly defined the term reasonable doubt to the jury. *State v. Cook*, 263 N.C. 730, 140 S.E. 2d 305; *State v. Brackett*, 218 N.C. 369, 11 S.E. 2d 146.

We find no prejudicial error in the charge.

Defendant contends that the trial judge erred in imposing sentence.

At the time defendant was sentenced, G.S. 14-89.1 provided:

> "Any person who shall by the use of explosives, drills, or other tools unlawfully force open or attempt to force open or 'pick' the combination of a safe or vault used for storing money or other valuables, shall, upon conviction thereof, receive a sentence, in the discretion of the trial judge, of from ten years to life imprisonment in the State penitentiary."

Defendant was sentenced to imprisonment for the term of not less than twenty-five years to life imprisonment.

[4, 5]   Defendant contends that the minimum sentence in his indeterminate sentence should have been the minimum allowed by the statute, ten years, rather than the 25 years imposed. He argues that the lack of guidelines resulting from the granting of such wide judicial discretion results in lack of uniformity in sentencing so as to constitute cruel and unusual punishment. We do not agree.

It has long been recognized in this jurisdiction that a sentence within statutory limitation is not cruel or unusual punishment in the constitutional sense. *State v. Caldwell*, 269 N.C. 521, 153 S.E. 2d 34; *State v. Newell*, 268 N.C. 300, 150 S.E. 2d 405. The Legislature has granted to trial judges the power to impose, within an established range, sentences which they deem appropriate, and in exercising this discretion the trial judge is not confined to the lower limits in imposing an indeterminate

sentence. G.S. 148-42; *State v. Fleming,* 202 N.C. 512, 163 S.E. 453.

[6] . Although it was not brought to our attention by either brief filed in this appeal, we are cognizant of the 1973 Amendment to G.S. 14-89.1. The statute as amended by Chapter 235 of Session Laws, effective 19 April 1973, now reads as follows:

> "Any person who shall, by the use of explosives, drills, or tools, unlawfully force open or attempt to force open or 'pick' the combination of a safe or vault used for storing money or other valuables, shall, upon conviction thereof, receive a sentence, in the discretion of the trial judge, of not less than two years nor more than 30 years' imprisonment in the State penitentiary."

The effect of the Amendment was to delete the word "other" preceding the word "tools" and to substitute "of not less than two years nor more than 30 years" in lieu of "from ten years to life imprisonment."

Section 2 of the act states: "This act shall apply to all offenses committed after its ratification and shall become effective upon ratification."

If, pending an appeal in a criminal case, the Legislature reduces the range of punishment in the statute under which defendant was indicted, the appellate court ordinarily must give effect to the reduction of punishment. *State v. Pardon,* 272 N.C. 72, 157 S.E. 2d 698; *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765. However, when the amending statute contains a savings clause or manifests a legislative intent to make the amendment prospective only, then punishment must be imposed under the pre-existing law. *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706; *State v. Pardon, supra; State v. Perkins,* 141 N.C. 797, 53 S.E. 735.

The 1973 Amendment did not repeal G.S. 14-89.1. The main thrust of the Amendment was directed to the punishment provisions and by its Section 2, the amended statute expressly provided that this act shall apply to *all offenses committed after its ratification.* This Amendment clearly manifests a legislative intent that the reduction in punishment should apply only to acts committed after 19 April 1973.

Since the acts for which defendant was prosecuted occurred prior to 19 April 1973, the trial judge properly imposed sentence

State v. Cross

according to the provision of G.S. 14-89.1 as it existed before the 1973 Amendment.

We are unable to find error sufficiently prejudicial to warrant a new trial.

No error.