An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1308

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

v.

BUDDY RAY RUSSELL

Buncombe County
No. 11 CRS 063119

Appeal by defendant from judgment entered 25 April 2013 by Judge Sharon Tracey Barrett in Buncombe County Superior Court. Heard in the Court of Appeals 19 March 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Barry H. Bloch, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender John F. Carella, for defendant.*

ELMORE, Judge.

On 25 April 2013, a jury found Buddy Ray Russell (defendant), guilty of robbery with a dangerous weapon. The trial court sentenced defendant as a prior record level VI offender to 120-153 months of active imprisonment. Defendant appeals. After careful consideration, we find no prejudicial error.

## I. Facts

On 9 November 2011, defendant entered Capital Bank on Leicester Highway in Buncombe County, approached a bank teller at her counter, and handed her a note. The note read, "[i]t is a stick up. NO! [sic] die [sic] pack . . . all 100.00 or I will kill. I got a gun. Lay the money out where I can see it now. Hurry now." In response, the teller retrieved a $100 bill and gave it to defendant. He then asked for an additional $100 bill, and the teller handed him the demanded amount. The teller then "looked at the mirror and saw [defendant] walk out the door." She immediately activated the bank's silent alarm to notify the police and told a co-worker to lock the doors because they had "just been robbed." Officer Kevin Calhoun of the Buncombe County Sheriff's Office heard about the robbery through a radio broadcast by the Sheriff's Office's Communications Division. He obtained a description of the suspect and encountered defendant, who matched the description, riding his bicycle on Ben Lippen Road. Since defendant matched the suspect's description, he was stopped and taken into custody. Although defendant was eventually arrested and charged with robbery with a dangerous weapon, a gun was never found. At trial, the teller testified that as soon as she read the note,

she was concerned for her safety and stated, "the first thing that just popped in my mind was my daughter's at school, and I just thought, '[d]on't shoot me in the back.'" Although she never saw a gun, the teller believed that defendant would have been able to conceal the gun in his clothes or coat. Defendant testified and admitted to entering the bank, writing the note, and obtaining the money. However, defendant stated that he never possessed a gun when he walked into the bank or at anytime on 9 November 2011.

## II. Analysis

### a.) Jury Selection

Defendant first argues that the trial court erred in overruling his objections to the prosecutor's statements and questions to prospective jurors during jury selection. Specifically, defendant argues that the prosecutor's "improper questions prejudiced [him] because they indoctrinated the jury with a legal theory that would allow him to be convicted of robbery with a dangerous weapon in the absence of an essential element of the crime." Defendant avers that by allowing this alleged line of improper inquiry, he was denied his constitutional right to an impartial jury. We disagree.

The scope of *voir dire* questions "rests largely in the discretion of the trial court. The exercise of such discretion constitutes reversible error only upon a showing by the defendant of harmful prejudice and clear abuse of discretion by the trial court." *State v. Jones*, 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997) (citations omitted). Our review of *voir dire* questioning requires that we focus on "the entire record of the *voir dire*." *State v. Johnson*, 209 N.C. App. 682, 684, 706 S.E.2d 790, 793 (2011) (citation and quotation omitted). The constitutional right to an impartial jury "contemplates that each side will be allowed to make inquiry into the ability of prospective jurors to follow the law. Questions designed to measure a prospective juror's ability to follow the law are proper within the context of jury selection *voir dire*." *Jones*, 347 N.C. at 203, 491 S.E.2d at 647 (citation omitted). However:

> hypothetical questions so phrased as to be ambiguous and confusing or containing incorrect or inadequate statements of the law are improper and should not be allowed. Counsel may not pose hypothetical questions designed to elicit in advance what the juror's decision will be under a certain state of the evidence or upon a given state of facts.

*Id*. at 202, 491 S.E.2d at 647 (citation and quotation omitted).

In the case at bar, the prosecutor stated, over defendant's objection, during *voir dire*:

> [T]he law in North Carolina says that if you threaten the use of a deadly weapon and it is reasonable that the victim believe that, that you can [be] found guilty of armed robbery. . . . [I]f the judge instructs you that in North Carolina you don't have to have a gun in your possession but if you just threaten the use of one, you can be found guilty of armed robbery, does everybody think they can follow that instruction? Does everybody think they can follow what the judge tells them the law is?

Even if we assume *arguendo* that 1.) the prosecutor misstated the relevant law during jury selection and 2.) the trial court erred in overruling objections to the prosecutor's statements to the jury, defendant has failed to show that the trial court's alleged error prejudiced him. Before *voir dire* began, the trial court told the prospective jurors that

> I will instruct you as to all of the law that you are to apply to the evidence in this case. It is your duty to apply the law as I will give it to you, and not as you think the law is, or as you might like it to be. . . . At this point you are not expected to know the law. Counsel should not question you about the law except to ask whether you will accept and follow the law as given by the court.

After defendant objected to the prosecutor's statements of law, the trial court reiterated to the jurors:

> As jurors, you may not let your present opinion or information influence your decision in a case or let it prevent you from rendering any proper verdict required by the facts and the law. The test for qualification for jury service is not the private feelings of a juror, rather it is whether the juror can honestly set aside any such feelings, fairly consider the law and evidence, and impartially determine the issues[.]

A review of the *voir dire* questioning indicates that in addition to the two examples above, the trial court made other reminders to prospective jurors to only follow the trial court's instruction of the law, despite what the prosecutor told them. In addition, an entire reading of the prosecutor's *voir dire* shows that he told the jurors to adhere to the trial court's instructions. Moreover, all selected jurors said they would accept the law as given by the trial court, and proper jury instructions were given after closing statements. Accordingly, defendant has failed to show that the prosecutor's misstatements of law resulted in harmful prejudice. *See Johnson*, 209 N.C. App. at 691, 706 S.E.2d at 796-97 (holding that any error during *voir dire* was not prejudicial to defendant when the trial court subsequently stated the correct law for the jury and asked jurors if they could follow its instructions).

**b.) Excusal of Prospective Juror #6**

Defendant also argues that the trial court's excusal of prospective juror #6 deprived defendant of his constitutional right to an impartial jury because it signaled the trial court's endorsement of the prosecutor's misstatements of law. We disagree.

"[W]e must defer to the trial court's judgment as to whether the prospective juror could impartially follow the law." *State v. Bowman*, 349 N.C. 459, 471, 509 S.E.2d 428, 436 (1998), *cert. denied*, 527 U.S. 1040, 144 L. Ed. 2d 802 (1999). The trial court's decision "as to whether this prospective juror's beliefs would affect her performance as a juror" will be upheld on appeal "[a]bsent an abuse of discretion[.]" *Id*. (citation omitted).

After the prosecutor told the prospective jurors his version of the applicable law, he collectively asked them whether they could follow that instruction on the law. Prospective juror #6 answered, "No, my conscious [sic] won't let me do that. I'm sorry." The trial court then specifically asked prospective juror #6:

> TRIAL COURT: [A]t the appropriate time, the court will be giving the jury in this case the instructions about what the law is that they are to apply to the facts as the jury finds the facts to be. I want to follow up

with you on the issue that was discussed about whether you would be able to set aside your personal views or your personal feelings and follow the law as I give it to you. In light of the reminders that I've just read and the question I'm asking, will you be able to set aside your personal views and follow the law as the court gives it to you, or do you think in all honesty you would not be able to do that?

PROSPECTIVE JUROR NUMBER 6: I will do the best I could, but this is a serious thing and you have to live with your conscious [sic] and [sic] I don't believe that I could -- I don't believe I could do it. I really don't. I'll do my best to, but I don't think I can.

Again, even if we assume *arguendo* that the prosecutor misstated the law, the trial court's excusal of prospective juror #6 did not amount to endorsing the prosecutor's version of the law. The trial court made clear that the applicable law had not yet been given to the jury, irrespective of the prosecutor's statements. It specifically asked prospective juror #6 if he could follow the law as instructed by the trial court at the appropriate time, and he indicated that he could not. Thus, prospective juror #6's answer provided the trial court with sufficient grounds to excuse him from the jury. *See id.* (holding that the trial court did not abuse its discretion in excusing prospective juror in death penalty case when she stated that "her personal beliefs might affect her consideration of the

death penalty for defendant"); *see also* N.C. Gen. Stat. § 15A-1212 (2013) (providing that a challenge for cause can be made based upon prospective juror's inability to "render a verdict with respect to the charge in accordance with the law of North Carolina").

## c.) Misstatement of Law During Closing Argument

Next, defendant argues that the trial court erred in overruling his objections during the State's closing argument because the prosecutor misstated the law pertaining to the charge of robbery with a firearm. We disagree.

> The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection. In order to assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling could not have been the result of a reasoned decision.

*State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citations and quotation marks omitted). An incorrect statement of law made by the prosecutor during closing arguments requires the trial court, upon timely objection, to instruct "the jury that the State's argument was improper. The trial court's failure to sustain defendant's objection and instruct the jury to disregard the statement [is] error." *State v. Ratliff*, 341

N.C. 610, 616-17, 461 S.E.2d 325, 328-29 (1995) (citation omitted). This Court shall order a new trial if "defendant shows on appeal that this error was material and prejudicial." *State v. Harris*, 290 N.C. 681, 695, 228 S.E.2d 437, 445 (1976) (citation omitted). However, the prejudicial effect of such an error can be cured by a trial court's proper instruction to the jury on the relevant law. *State v. Anderson*, 322 N.C. 22, 38, 366 S.E.2d 459, 469 (1988).

Here, defendant specifically argues that the prosecutor's statements during his closing argument were improper because "armed robbery requires proof that the defendant did *in fact* possess a deadly weapon[,]" but the prosecutor "contended that the statutes . . . did not require the jury to find or infer the presence of a dangerous weapon to convict [defendant]." The relevant portions of the prosecutor's closing statement relating to the presence of a firearm state:

> When you came into this courthouse back on Monday, you may have had the belief that if an individual robs a bank with a gun versus the threatened use of a gun, that they should be punished differently. If that was your opinion, you have to set that aside because that's not the law in North Carolina. . . . North Carolina doesn't make a distinction between an individual who has a gun and an individual who doesn't have a gun.

The prosecutor also read a quotation from *State v. Jarrett*, 167 N.C. App. 336, 607 S.E.2d 661 (2004), during the State's closing argument. The prosecutor stated:

> And this is the holding of *Jarrett*. This is what the Court of Appeals said: This court has explicitly held proof of armed robbery requires that the victim reasonably believed that the defendant possessed or used or threatened to use a firearm in the perpetration of a crime. The State need only prove that the defendant represented that he had a firearm and that the circumstances led the victim to reasonably believe that the defendant had a firearm or might use it.

Even if we assume *arguendo* that the prosecutor's above statements of law and reference to *Jarrett* were inaccurate and improper, they were not prejudicial to defendant. During the State's closing argument, the prosecutor told the jury that "[t]his judge is going to instruct you on the law here in a little bit" and "[y]our role as a juror in North Carolina is strictly to apply the law as it's given to you." After closing arguments, the trial court provided the jury with proper instructions on the applicable law and stated, "[y]ou must [] apply the law which I am about to give you to those facts. It is absolutely necessary that you understand and apply the law as I give it to you, and not as you think it is, or as you might like

it to be." Shortly thereafter, the trial court instructed that the State must prove: "Sixth, that the defendant had a firearm in his possession at the time he obtained the property or that it reasonably appeared to the victim that a firearm was being used, in which case you may infer that the said instrument was what the defendant's conduct represented it to be." Thus, the prosecutor's deference to the trial court coupled with the trial court's correct jury instructions vanquished any prejudice stemming from the prosecutor's alleged misstatement of law. *Anderson*, *supra*.

### d.) Jury Requests

In his final argument on appeal, defendant contends that the trial court erred in failing to provide an instruction that the "jury instructions were the sole source of law they should apply." The basis for defendant's argument stems from the trial court's denial of the jury's request to "have copies or view the two statutes" relating to common law robbery and robbery with a dangerous weapon. Defendant argues that the trial court's failure to instruct the jury to consider only the jury instructions as the sole legal authority confused the jury as to the applicable law. We disagree.

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973), *cert. denied*, 418 U.S. 905, 41 L. Ed. 2d 1153 (1974). "As to the issue of jury instructions, we note that choice of instructions is a matter within the trial court's discretion and will not be overturned absent a showing of abuse of discretion." *State v. Nicholson*, 355 N.C. 1, 66, 558 S.E.2d 109, 152, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002). The trial court is best positioned to decide whether "additional instruction will aid or confuse the jury in its deliberations, or if further instruction will prevent or cause in itself an undue emphasis being placed on a particular portion of the court's instructions." *State v. Prevette*, 317 N.C. 148, 164, 345 S.E.2d 159, 169 (1986). The law presumes that "jurors . . . attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."

*State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208 (1993) (citation and quotation omitted).

Here, the trial court did not give a specific instruction to only consider the jury instructions once it denied the jury's request to view the statutes. However, the trial court properly eliminated extraneous legal sources by refusing to give the jurors access to the statutes and providing them with printed copies of the full jury instructions. Moreover, the trial court told the jury to follow its instructions:

> You must [] apply the law which I am about to give you to those facts. It is absolutely necessary that you understand and apply the law as I give it to you, and not as you think it is, or as you might like it to be. . . . I caution you to consider the instructions as a whole and not to pick one part of the instructions out and disregard the other instructions.

Thus, defendant has failed to show how the trial court's actions confused the jury or led the jury to consider matters outside the jury instructions. Accordingly, we overrule this issue on appeal.

### III. Conclusion

In sum, we expressly decline to address whether or not the prosecutor misstated the law during jury selection or closing arguments. Even if the prosecutor misstated the law, his

statements did not prejudice defendant due to the curative actions by the trial court. Furthermore, the trial court did not err in excusing prospective juror #6 because he indicated that he could not follow the law as instructed by the trial court. Finally, the trial court's failure to instruct the jury to consider the jury instructions as the sole legal authority was free of error as defendant failed to show how the trial court's omission confused the jury as to the applicable law.

No prejudicial error.

Judges McCULLOUGH and DAVIS concur.

Report per Rule 30(e).